1
2
3
4                    UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   JOHN DOE,                              Case No.  23-cv-01890-AMO

8                Petitioner,

9         v.                              **ORDER RE PETITION FOR WRIT OF**
                                          **HABEAS CORPUS**
10  MOISES BECERRA, et al.,               Re: Dkt. No. 1

11               Respondents.

12

13          On April 29, 2023, Petitioner John Doe ("Doe" or "Petitioner") filed an immigration

14  habeas petition.[1]  ECF 1.  He is currently being detained by Immigration and Customs

15  Enforcement ("ICE").  He has been in immigration detention for over 22 months without having

16  received an individualized determination of whether he poses a risk of flight or a danger to the

17  community.  He brings this petition for habeas corpus, asking the Court to release him or order a

18  bond hearing at which the Government must demonstrate that further detention is warranted.

19          Respondents Merrick B. Garland, the United States Attorney General; Alejandro

20  Mayorkas, Secretary of the Department of Homeland Security; Tae Johnson, Acting Director of

21  ICE; and Moises Becerra, Field Office Director for ICE's San Francisco Field Office (collectively

22  "Respondents" or "the Government"), oppose the Petition, arguing that the Court lacks

23  jurisdiction, and that Doe is not entitled to release or a bond hearing.

24          Having reviewed the arguments and records in this case, the Court GRANTS the Petition

25  in part.  The Government must provide Petitioner Doe with a constitutionally sufficient bond

26

27  ───────────────────
    [1] Petitioner also filed an administrative motion to proceed under pseudonym.  ECF 10.
28  Respondents filed a statement of non-opposition to that motion.  ECF 12.  Good cause appearing,
    that motion is hereby GRANTED.

United States District Court
Northern District of California

hearing before an Immigration Judge ("IJ") on or before October 20, 2023, where the Government will bear the burden of proving by clear and convincing evidence that Doe remains a flight risk or danger to the community.  If the IJ does not issue a decision within 14 days from the date of the bond hearing, Doe SHALL be released from detention.

## I.   BACKGROUND

Doe was born in Oaxaca, Mexico, and he was brought to the United States as an adolescent after several instances of violence in his family's community.[2]  Petition (ECF 1) ¶ 29.  Doe had two interactions with law enforcement that resulted in convictions soon after he turned 18 years old.  Petition ¶ 35.  At age 18, in 2016, he was convicted of carrying a concealed weapon within a vehicle, and sentenced to six months in jail and probation, with credit for time served and good conduct credits.  Petition ¶ 36.  In 2017, he was convicted of two misdemeanor counts of California Penal Code § 422, criminal threats; and one count of California Penal Code § 245(a)(4), assault likely to cause bodily injury.  Petition ¶ 37.  After serving his sentence for the 2017 convictions, Doe was transferred to ICE custody and placed in removal proceedings.  Petition ¶ 40.  He was denied relief under the Convention Against Torture ("CAT") and deported to Mexico on July 22, 2019.  Petition ¶ 40.

Doe's family continued to face violence, and Doe himself was kidnapped and beaten upon his return to Mexico.  Petition ¶¶ 41-45.  He crossed back into the United States in early 2021.  Petition ¶ 46.  In August 2021, he pleaded no contest to a charge of misdemeanor trespassing that arose from a March 2021 incident, and he served 30 days in county jail starting in October 2021.  Petition ¶ 48.  Petitioner Doe was transferred to federal custody on November 14, 2021, and has remained so since.  Petition ¶¶ 18, 48-49.

ICE determined that Doe was subject to "mandatory" no-bond detention under Title 8 U.S.C. § 1226(c) and ineligible for a bond hearing because of his 2017 assault conviction under California Penal Code § 245(a)(4).  Petition ¶ 50.  Doe complains of generally inhumane

---

[2] The Court only briefly summarizes the conditions faced by Doe and his family in Mexico in the interest of keeping this Order brief.  The Court's summary is not intended to ignore or minimize the hardships faced.

conditions during the course of his detention as well as abusive treatment unique to him.  Petition ¶¶ 52-58.

During his most recent ICE detention, new removal proceedings were initiated against Doe.  Petition ¶ 69.  He sought withholding of removal and relief under the CAT, which was initially denied by the Immigration Judge ("IJ").  Petition ¶¶ 71-72.  Doe appealed the IJ's determination, and the Board of Immigration Appeals remanded Doe's case to the IJ after finding several errors in the IJ's assessment.  Petition ¶¶ 73-74.

Doe submitted a release request to ICE on February 17, 2023.  Petition ¶ 76.  That request was denied without explanation.  *Id.*  Doe filed the instant petition for writ of habeas corpus on April 19, 2023.  ECF 1.  Following completion of briefing and before this Court acted on the petition, the IJ issued a new order.  ECF 21-1.  The IJ ordered Doe removed to Mexico but granted him withholding of removal under the CAT.  *Id.*  Both Doe and the Department of Homeland Security ("DHS") waived appeal.  *Id.*  The IJ's order is final.  8 C.F.R. § 1003.39.  Doe remains in detention, and as made clear by his counsel at the hearing, nothing has changed regarding his detention.

## II.      JURISDICTION

Doe filed this habeas petition pursuant to Title 28 U.S.C. § 2241, which allows district courts to grant writs of habeas corpus "within their respective jurisdictions."  28 U.S.C. § 2241(a).  Doe asserts that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution, naming the Director of the San Francisco Field Office as one of the respondents.  Petition ¶¶ 8, 19.  Respondents argue that jurisdiction and venue are proper in the Eastern District of California where Doe was detained at the time of filing, citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).  Return at 6-7 (ECF 14 at 12-13).

Respondents' argument runs squarely counter to Ninth Circuit precedent that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir. 2011)).  Moreover, since the Director of the San Francisco Field Office is the proper respondent

1  and falls within this Court's jurisdiction, it is of little consequence where Petitioner is detained so

2  long as he remains in the Director's custody.  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187

3  (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)

4  (citing *Padilla*, 542 U.S. at 442-44); *see, e.g.*, *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023

5  WL 2744397, at *4 (N.D. Cal. Mar. 31, 2023); *see also Salesh P. v. Kaiser*, No. 22-CV-03018-

6  DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases in the Northern

7  District finding jurisdiction over immigration habeas petitions filed by persons detained by the San

8  Francisco Field Office Director within the Eastern District).

9        Having found it has jurisdiction to consider the Petition, the Court turns to consider its

10  merits.

11  **III.    ENTITLEMENT TO A BOND HEARING**

12        Doe advances that his continued detention under the mandatory detention provisions of the

13  Immigration and Nationality Act ("INA") violates his Fifth Amendment right to due process and

14  seeks either release or, alternatively, a bond hearing on whether his continued detention is

15  justified.  The Government argues against both forms of relief on the basis that the applicable

16  provisions of the INA require Doe's continued detention.

17        **A.    Statutory Basis for Detention**

18        The Due Process Clause of the Fifth Amendment to the United States Constitution forbids

19  the Government from depriving a person of life, liberty, or property without due process of law.

20  U.S. Const. Amend. V.  "The fundamental requirement of due process is the opportunity to be

21  heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333

22  (1976) (internal quotation marks and citation omitted).  Civil detention violates due process

23  outside of "certain special and narrow nonpunitive circumstances."  *Zadvydas v. Davis*, 533 U.S.

24  678, 690 (2001) (internal quotation marks and citation omitted).

25        Petitioner argues that constitutional due process entitles him to a bond hearing even though

26  the INA provisions governing his civil detention do not articulate a right to a bond hearing.  *See*

27  *generally* ECF 1.  At the time Doe filed this petition for writ of habeas corpus, he was detained

28  under Title 8 U.S.C. § 1226(c).  ECF 1.  Although the Attorney General "may constitutionally

4

detain deportable aliens pursuant to § 1226(c)," *Demore v. Kim*, 538 U.S. 510, 526 (2003), district courts frequently review constitutional challenges to such detention.  *See Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *3 (N.D. Cal. June 11, 2021) (collecting cases); *see also Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges – that is, constitutional challenges to applications of the statute as we have now read it.").  A person detained under § 1226(c) "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified" – such as if there were "an unreasonable delay by the [Government] in pursuing and completing deportation proceedings."  *Demore*, 538 U.S. at 532 (Kennedy, J., concurring) (citations omitted).

As noted above, the IJ in Doe's immigration case entered a final order of removal that simultaneously granted relief under the CAT.  ECF 21-1.  Doe's continued detention is now governed by Title 8 U.S.C. § 1231(a), which provides that Doe "shall" be detained during the 90-day period in which the Attorney General must remove him.[3]  Though the Government contends that Doe's continued detention is mandatory under Section 1231(a), it made the same argument that Doe's detention was mandatory when the statutory basis for detention was Section 1226(c). Return at 8-10 (ECF 14 at 14-16).  Both Section 1231(a) and Section 1226(c) provide that the Attorney General "shall" detain an alien, but just as the "shall" in Section 1226 gives way to as-applied due process challenges, so too must the "shall" in Section 1231(a).  *See, e.g.*, *Demore*, 538 U.S. at 526; *Preap*, 139 S. Ct. at 972; *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023).  To the extent that Respondents aver that Doe cannot be released under any circumstance during the removal period pursuant to Section 1231(a)(2), the clause they reference only applies to aliens convicted of certain crimes, not Doe.  *Id.*, § 1231(a)(2) ("Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this

---

[3] If the detainee is held beyond the 90-day period, however, "§ 1231(a)(6) provides only that certain aliens '*may* be detained' while efforts to complete removal continue."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (emphasis in original).  The Supreme Court recognizes that the use of the word "may" "suggests discretion."  *Id.* at 842 (citing *Zadvydas*, 533 U.S. at 680).

United States District Court
Northern District of California

title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.").

Respondents argue in part that Doe's petition is now moot in light of the change in the basis for his detention. ECF 24 at 3-5. The Court need not address this line of argument other than to acknowledge that a live controversy exists because Doe remains detained and to note that the Court's conclusion in this case is based on the length of Doe's detention without a hearing, not the statutory basis for his detention. In contrast to one of the orders cited by Respondents, *Quezada v. Hendricks*, 821 F. Supp. 2d 702, 704 (D.N.J. 2011), this Court does not find that the statutory basis for detention impacts the analysis, particularly where the Government has made clear that Doe's continued detention is not speculative. *See* ECF 24 at 5-6. The IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing. Doe's continued civil detention of more than 22 months without a hearing to consider the risks related to his potential release on bond supports his due process claim.

Respondents cite to Judge Freeman's similarly-titled case, *Doe v. Becerra*, for her denial of a temporary restraining order to an immigration detainee held under Section 1231(a) who sought habeas relief. *Id.*, No. 23-CV-00072-BLF, 2023 WL 218967 (N.D. Cal. Jan. 17, 2023). The detainee in that case was similarly situated to the Petitioner in this case in that he had a final order of removal that simultaneously granted relief under the CAT. *Id.* at 1-2. However, that case is inapposite to the circumstances here because the detainee in Judge Freeman's case argued that Section 1231(a) was unconstitutional as applied to him based exclusively on the unlikelihood that DHS would be able to identify a third country that would accept him. *Id.* Judge Freeman determined that the Doe petitioner could not challenge the constitutionality of his detention on that basis within the 90-day period granted to the government by statute to identify a third country. *Id.* at 4. Petitioner here does not challenge his continued detention on the basis that the government will not be able to identify a third country to which to remove him. Rather, Petitioner here asserts that his continued detention violates his due process rights because he had already been detained for 21 months without a bail hearing prior to the shift of the statutory basis for his detention to Section 1231(a). Doe's 17-plus months of detention prior even to the filing of his habeas petition

United States District Court
Northern District of California

1  similarly distinguishes the facts here from the Ninth Circuit's determination in *Khotesouvan* that

2  habeas petitions filed during the 90-day period set forth in Section 1231(a)(2) do not contravene

3  due process principles.  *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004).

4    In sum, the Court finds that the shift in the statutory basis governing Doe's detention does

5  not negate his constitutional rights nor substantively change the applicable due process analysis.

6  While statutory justification for Doe's detention has shifted, nothing has changed as a practical

7  matter – his time behind bars continues to increase without any showing by Respondents that his

8  civil detention is necessary to achieve the Government's non-punitive ends.  As the Ninth Circuit

9  has explained, that is a constitutional problem regardless of which statute currently applies.  *See*

10  *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute

11  that allows for arbitrary prolonged detention without any process is constitutional or that those

12  who founded our democracy precisely to protect against the government's arbitrary deprivation of

13  liberty would have thought so.").  The Court therefore proceeds to assess the merits of Doe's due

14  process claim.

15    **B.**  **Due Process and Doe's Continued Detention**

16    Doe argues that he is entitled to a bond hearing on two bases.  First, he argues that

17  immigration detention lasting longer than six months becomes unconstitutionally prolonged.

18  Petition ¶ 127.  Second, he argues that the balance of factors under *Mathews v. Eldridge*, 424 U.S.

19  319 (1976), require a bond hearing in his case.  Petition ¶¶ 128-135.  Respondents argue that no

20  binding precedent supports a "bright-line" six-month rule.  Return at 12-14 (ECF 14 at 18-20).

21  Respondents also argue that *Mathews* does not apply to mandatory detention under § 1226(c), and,

22  in the alternative, the *Mathews* factors do not require an additional hearing in this case.  Return at

23  14-19 (ECF 14 at 20-25).

24    Although Doe additionally argues that his nearly two-year civil detention violates

25  substantive due process because it is excessive and unnecessary in relation to its purpose, the

26  Court declines to reach that inquiry because it ultimately grants relief based on Doe's procedural

27  due process challenge to his continued civil detention under the test set forth in *Mathews*, 424 U.S.

28  at 335.  Due process requires "the opportunity to be heard 'at a meaningful time and in a

meaningful manner.'" *Mathews*, 424 U.S. at 333 (citation omitted).  Under *Mathews*, courts

consider (1) the individual's private interest that will be impacted by the official action, (2) the

risk of erroneous deprivation of that interest and the probable value of additional procedural

safeguards, and (3) the government's interest.  *Id.* at 334-35.  The Court addresses these

considerations in turn.

### 1.      Individual's Interest

The "main private interest at stake" here is Doe's interest in "[f]reedom from

imprisonment – from government custody, detention, or other forms of physical restraint."

*Perera*, 2021 WL 2400981, at *4 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also*

*De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30,

2019) (finding a strong private interest where the petitioner "risks continued detention absent a

bond hearing").  "[L]iberty is the norm, and detention prior to trial or without trial is the carefully

limited exception." *Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (quoting *United*

*States v. Salerno*, 481 U.S. 739, 755 (1987)).

In this case, Doe has been detained for over 22 months without a bond hearing, and there is

no reasonably certain end to his detention.  Although the clock has started to run on his 90-day

detention period under Section 1231(a), Respondents fail to provide any certainty regarding the

timing of Doe's removal.  Such uncertainty is only exacerbated by the IJ's grant of relief under the

CAT because the Government cannot simply remove him to Mexico, his country of origin.  *See*

*Zadvydas*, 533 U.S. at 684-87 (petitioners had final removal orders but no countries willing to

accept them).[4]  As Petitioner cites, an extremely limited number of persons granted withholding of

removal were deported to a third country.  *See* ECF 23 at 5 n.2 (citing American Immigration

Council, *The Difference Between Asylum and Withholding of Removal*, at 7, available at:

https://perma.cc/6U37-WZ7C).  Doe is now in a similar situation, and the IJ's order in his case

therefore contributes to the possibility of his indefinite detention.  In light of Doe's interests in

---

[4] Doe is only a citizen of Mexico.  *See* ECF 16, at 8.  Even if DHS found another country willing to accept Doe, they would have to provide him with notice and opportunity to apply for withholding or deferral of removal to that country, potentially leading to further proceedings in immigration court. *See, e.g.*, *Jama v. ICE*, 543 U.S. 335, 348 (2005).

being free from detention, the Court finds that the first *Mathews* factor weighs in Doe's favor.

### 2.    Risk of Erroneous Deprivation of Private Interest

The Court next examines the value of additional safeguards given the risk of erroneous deprivation of Doe's rights. *See Mathews*, 424 U.S. at 335.  Respondents argue that there is no risk of erroneous deprivation of rights because Petitioner has already received all the procedural protections necessary – he has been found guilty of original charges in state court, and those convictions render him removable. *See* Return at 17 (ECF 14 at 23).  The Government misconstrues the second factor.  In the over 22 months that Doe has been deprived of his liberty, he has never had a bond hearing to evaluate the necessity of his ongoing civil detention.  In these circumstances, the value of additional procedural safeguards in the form of a bond hearing is substantial given the risk of erroneous deprivation of Doe's rights. *See Rajnish*, 2020 WL 7626414, at *9 (holding that "the value added by another hearing is great" where petitioner had been held for nine months since an "unconstitutional" initial bond hearing that "assigned the risk of error to him, not to the government" and there had been "important developments" in the proceedings); *see also Pham*, 2023 WL 2744397, at *6 n.9 (citing *Preap*, 139 S. Ct. at 972) (finding a risk of erroneous deprivation even though petitioner was subject to mandatory detention as "successful due process challenges to mandatory detention would require additional process" such as a bond hearing).  At the hearing, moreover, the Government reiterated its position that Doe must remain in detention, demonstrating that it will not provide Doe with a bond hearing unless ordered to do so.  Given the lack of particularized fact-finding related to Doe's flight risk and/or danger to the community, the Court finds that second *Mathews* factor also weighs in Doe's favor.

### 3.    Government Interest

Respondents argue that there is a "legitimate government purpose" in detaining noncitizens during the pendency of their removal proceedings.  Return at 18 (ECF 14 at 24) (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-65 (9th Cir. 2008) (citation omitted)).  However, the government's interest at issue here is "the ability to detain [Doe] *without providing him with [a] bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in original); *see also Perera*, 2021 WL 2400981 at *5 (same); *Zerezghi*

*v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020) (citing *Mathews*, 424 U.S. at 335) (noting that the third factor considers the "burden that the additional or substitute procedural requirement would entail," not the government's substantial interest in immigration enforcement "in general").

Respondents focus their argument on how detaining Doe facilitates his removal upon completion of the removal proceedings. Yet Respondents do not explain how providing Doe with a bond hearing after more than 22 months of detention would undermine their interest in detaining individuals who are a flight risk or dangerous to the community, the more specific question presented by Doe's petition. *See Perera*, 2021 WL 2400981 at *5 ("Requiring the government to provide Perera with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk"); *see also Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *8 (N.D. Cal. May 2, 2023) (same); *Hernandez Gomez*, 2023 WL 2802230 at *4 (same). Accordingly, the Government's interest here is minimal compared to Doe's interest in being free from detention.

Having weighed the *Mathews* factors, the Court concludes that Doe's continued detention without an individualized bond hearing violates his due process rights under the Fifth Amendment. Because the Court grants Doe's habeas petition on this basis, it need not consider whether to adopt a "bright-line" rule that individuals detained under Section 1226(c) are entitled to a bond hearing after six months.[5]

### C.    Burden of Proof

The parties also dispute whether the Government bears the burden of proof should the Court order a bond hearing. Doe argues that under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), the government bears the burden of proving by clear and convincing evidence that further detention is warranted. Petition ¶ 152. Respondents argue that *Rodriguez Diaz v. Garland*, 53

---

[5] Courts in this district have declined to adopt a "bright-line" rule, pointing to the "dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (citations omitted); *see, e.g.*, *Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *8 (N.D. Cal. May 2, 2023) (same); *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (same).

1    F.4th 1189 (9th Cir. 2022), called into question the holding of *Singh*, and based on Fourth Circuit

2    authority, Petitioner should bear the burden of proof to support his release.  *See* Return at 22 (ECF

3    14 at 28) (citing *Miranda v.Garland*, 34 F.4th 338, 363 (4th Cir. 2022)).

4         The Court agrees with Doe that the Government bears the burden of proof.  In *Singh*, the

5    Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien

6    is a flight risk or a danger to the community to justify denial of bond," because "civil commitment

7    for *any* purpose constitutes a significant deprivation of liberty."  638 F.3d at 1203-04 (emphasis in

8    original) (citation omitted).  *Rodriguez-Diaz* considered whether a second bond hearing was

9    constitutionally required in the Section 1226(a) context, and specifically declined to decide

10   whether *Singh* remains good law in Section 1226(c) cases.  *See Rodriguez-Diaz*, 53 F.4th at 1202

11   & n.4.  Thus, "[a]bsent controlling authority to the contrary, the reasoning of *Singh* and its holding

12   remain applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at

13   stake.'"  *Pham*, 2023 WL 2744397 at *7 (citation omitted).

14        The Court follows *Singh*'s reasoning and holds that the Government bears the burden of

15   proving by clear and convincing evidence that further detention is warranted.  *See, e.g.*, *Doe v.*

16   *Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding

17   that the government bears the burden in a constitutionally required bond hearing in the Section

18   1226(c) context post-*Rodriguez-Diaz*); *Salesh P.*, 2022 WL 17082375, at *9 ("At the hearing, the

19   government must justify his continued detention [under § 1226(c)] by establishing by clear and

20   convincing evidence that he is a flight risk or a danger to the community"); *see also Hernandez*

21   *Gomez*, 2023 WL 2802230 at *4 (collecting cases that the government bears the burden of proof).

22        The Court additionally finds that the bond hearing should be conducted by an IJ, not the

23   Court.  *See Mansoor v. Figueroa*, No. 17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D.

24   Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral

25   administrative determinations about Petitioner's eligibility for release on bond and/or placement in

26   a supervised release program.").  Although both sides acknowledged at the hearing that an IJ may

27   doubt his or her authority to conduct such a bond hearing, courts in this Circuit have regularly

28   found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk

of flight or dangerousness to the community.  *See, e.g.*, *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods").

**CONCLUSION**

The Court **GRANTS** Doe's Petition in part, and **ORDERS** that the Government provide him with a constitutionally compliant bond hearing before an immigration judge within **14 days** from the date of this Order.  The Government shall bear the burden of proving by clear and convincing evidence that Doe is a flight risk or a danger to the community.  If the immigration judge does not issue a decision within **14 days** of the bond hearing, Doe **SHALL** be released from detention.  The Court **ORDERS** Respondents to file on the docket (and under seal, if necessary) copies of any orders issued by the immigration judge.

**IT IS SO ORDERED.**

Dated: October 6, 2023

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**